UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| RANDY HANDEL,<br><br>  Plaintiff,<br><br>- vs -<br><br>UNITED PARCEL SERVICE, INC.,<br><br>  Defendant. | CIV. 18-4044<br><br>**COMPLAINT** |

For his Complaint against the Defendant, the Plaintiff states as follows:

**PARTIES**

1. Plaintiff is an individual who resides in Sioux Falls, South Dakota, and has maintained as his primary residence the Sioux Falls residence during all of the times relevant to this Complaint, even though he was on military deployment from time-to-time as described below.

2. The Defendant, United Parcel Service, Inc. ("UPS"), is a corporation organized under the laws of the State of Ohio with its principal executive office located at 55 Glenlake Parkway NE, Atlanta, Georgia 30328; UPS has for many years maintained offices in Sioux Falls, South Dakota and continues to maintain offices at 2700 N. Westport Street, Sioux Falls, South Dakota 57107.

3. Defendant is registered to do business in South Dakota and its Registered Agent for service of process is the Corporation Service Company, 503 S. Pierre Street, Pierre, South Dakota 57501-4522.

## JURISDICTION

4. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331, and 38 U.S.C. § 4323(b)(3).

## VENUE

5. Venue in the District of South Dakota, Southern Division, is proper because the Plaintiff resides there, the Defendant has substantial business contacts there, and the events underlying this Complaint substantially occurred there. 28 U.S.C. § 1391(b); 38 U.S.C. § 4323(b)(3).

## FACTS

6. Plaintiff first enlisted with the U.S. Army in 1976 and was a member of the South Dakota Air National Guard since 1980 until his retirement from the Guard. Plaintiff proudly served, and continues to serve, his country through a variety of military assignments, receiving a multitude of awards and decorations. Throughout the entirety of the Plaintiff's employment with UPS, he served in the South Dakota Air National Guard.

7. Plaintiff is a long-standing UPS employee, having been employed with UPS since 1989. Plaintiff is currently a Supervisor of the Comprehensive Health and Safety Program.

8. As a member of the South Dakota Air National Guard, Plaintiff was provided all of the protections of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, et seq.

9. From 1989 to 1993, Plaintiff worked for UPS as a loader/unloader. From 1994 until 2002, Plaintiff worked as a Human Resources Representative. From February, 2002 until April, 2003, Plaintiff worked as a Comprehensive Health and Safety Supervisor. In April, 2003, he moved to a position as an On-Road Supervisor, with the expectation of gaining operations

experience for one year before transitioning back into the Human Resources (HR) Department, and promotion acclimation into an HR manager position within UPS. At this time, April, 2003, Plaintiff's executive division manager became Jay Kelly.

## FIRST CAUSE OF ACTION
## DISCRIMINATION DUE TO MILITARY SERVICE

10.     Plaintiff re-alleges paragraphs 1 – 9 as though set out in full.

11.     USERRA prohibits the denial of promotion, or any benefit of employment, on the basis of an employee's membership, performance of service, and obligation for service in a uniformed military service. 38 U.S.C. § 4311(a).

12.     In 2003, Jay Kelly told Plaintiff that he would never be promoted to a managerial role because of the Plaintiff's obligations with the Air National Guard. On several occasions, when a manager directed Plaintiff to travel for a certain UPS purpose, and Plaintiff necessarily advised he could not due to military obligations, Kelly would castigate Plaintiff for declining the assignments, and would say "Nobody says 'No' to me," as part of a long, demeaning lecture. From that point forward, Jay Kelly continued to block the Plaintiff from seeking advancement within UPS because of Plaintiff's Air National Guard responsibilities, and threatened to fire Plaintiff. Consequently, the Plaintiff was never promoted, and did not seek promotion, for fear of retaliation by Jay Kelly or other employees associated with Jay Kelly's views on this issue.

13.     In addition to prohibiting the Plaintiff from seeking a promotion, Jay Kelly also set different standards for the Plaintiff due to his membership in and obligations to the Air National Guard. Jay Kelly required the Plaintiff to work unusual hours. Jay Kelly would force the Plaintiff to complete on the job service provider training on Fridays, knowing that the Plaintiff would have Air National Guard duties on some Friday afternoons. Kelly would force the Plaintiff to drive a truck, even if the Plaintiff already worked in excess of 60 hours that week,

and on many occasions 12 – 17 hours per day, (thereby in violation Department of Transportation rules). And, from October 20, 2005 to May 4, 2006, Kelly forced the Plaintiff to drive long distances early Monday mornings to Aberdeen, South Dakota, to perform a full day's work after arrival in Aberdeen. Jay Kelly did not treat other employees like this, but treated the Plaintiff differently due to his Air National Guard status/and obligations.

14.  Plaintiff was prohibited by Division Manager Jay Kelly from using any vacation time for approximately four years. The Plaintiff was forced to use all of his "paid time off" towards his Air National Guard duties. As a result, the Plaintiff was not able to take personal time off and was not able to take a vacation with his family. For over four years, 100% of the Plaintiff's working hours were spent either working for UPS or serving his country.

15.  Plaintiff's military service was the motivating factor for the actions taken by Kelly. 38 U.S.C. § 4311 (c)(1), resulting in the damages described in paragraphs 27 – 40, below.

16.  UPS's discriminatory conduct violated USERRA, under 38 U.S.C. § 4301, et seq. There is no statute of limitations for asserting a claim under USERRA. See 38 U.S.C § 4327.

17.  Plaintiff's active duty deployments tolled the 28 U.S.C. § 1658(a) statute of limitations which was in effect prior to October 10, 2008 pursuant to the Servicemembers Civil Relief Act, 50 App. U.S. C. § 5261(a). From January, 2002 until his retirement from the Air National Guard on December 22, 2008, Plaintiff was on active duty for 715 days.

18.  Plaintiff submitted his complaint to the Secretary of Labor, who investigated the complaint. 38 U.S.C. § 4322(a). The Secretary was unable to resolve the complaint and informed Plaintiff that he could proceed under the enforcement of rights provisions under 38 U.S.C. § 4323.

## SECOND CAUSE OF ACTION
## RETALIATION FOR PROTECTED ACTIVITY

19. Plaintiff re-alleges Paragraphs 1 – 18 as though set out in full.

20. In April, 2006, while driving from Aberdeen to Sioux Falls, on a Friday night, after another exhausting work week, Plaintiff fell asleep and his vehicle ended up in the interstate median. Because it had been raining all day, Plaintiff had to call a tow truck to pull him out.

21. Plaintiff called a UPS 800 number, that Friday evening, known as the Corporate Business & Ethics hotline, left a voicemail, and complained about the schedule which had been imposed upon him.

22. The next morning, a UPS manager from Atlanta, GA called Plaintiff back and told him that an Employee Relations Manager would call Plaintiff.

23. The Employee Relations Manager called Plaintiff the following day, on Sunday, and told him not to travel to Aberdeen, SD the next morning, but to stay in Sioux Falls.

24. Plaintiff went to work in Sioux Falls the next morning (Monday). Plaintiff's manager called Plaintiff about his absence from Aberdeen, and Plaintiff relayed the instructions he had received from the Employee Relations Manager. The Aberdeen manager relayed the information to Jay Kelly.

25. Jay Kelly at first angrily told Plaintiff he was terminated and continued to yell at him. Jay Kelly received a telephone call at that time from the District Manager, who told Kelly not to talk to Plaintiff, and to report to the Omaha District Office that day.

26. Plaintiff continued to work for UPS but Jay Kelly's treatment of Plaintiff became even worse, in retaliation for Plaintiff engaging in the protected activity of the Business and Ethics Hotline, and in retaliation for Plaintiff's continued military service, resulting in the damages described below, in paragraphs 27 – 40.

## DAMAGES

27. Jay Kelly's deliberate refusal to allow the Plaintiff to seek a promotion to a management position caused the Plaintiff financial harm. The discrimination started in 2003, and the Plaintiff would have been promoted in April, 2004, were it not for Jay Kelly's discriminatory conduct.

28. The difference in Plaintiff's salary between what he earned as an On-Road Supervisor and what he would have earned as a Human Resources manager was approximately $15,000 in the initial year (i.e. April, 2004 to April, 2005). Plaintiff's potential for further career advancement would have been far higher in a managerial position that it was in an operations position. This is particularly true given Plaintiff's advanced degrees of Master of Science in Management and Master of Business Administration.

29. Over 14 years (April, 2004 to present), Plaintiff was conservatively denied $210,000.00 ($15,000 x 14 years) in salary compensation.

30. As an On-Road Supervisor, the Plaintiff received shares of stock according to UPS' Managers Incentive Program ("MIP"). As an On-Road Supervisor, Plaintiff received *one* unit/factor under the MIP. However, employees in a managerial role (e.g. Human Resources managers) received *two* units/factors under the MIP.

31. Plaintiff received the following shares of stock under the MIP in the following years:

- 2005:   240 shares
- 2006:   185 shares
- 2007:   206 shares
- 2008:   unknown
- 2009:   99 shares
- 2010:   216 shares
- 2011:   unknown
- 2012:   175 shares
- 2013:   unknown

6

- 2014:    134 shares
- 2015:    135 shares
- 2016:    unknown
- 2017:    109 shares

32. For the years in which Plaintiff received a known number of MIP shares, Plaintiff received an average of 166.6 shares per year. Therefore, over 14 years, the Plaintiff received approximately 2,332.4 shares. Based on UPS' current stock value of $103.72, this equates to $241,916.52. Since the Plaintiff was only provided one MIP factor, instead of the two MIP factors Human Resources managers receive, the Plaintiff was deprived of $241,916.52, due to the discriminatory conduct of Jay Kelly and UPS.

33. Further, the MIP shares are calculated based on an employee's salary. Since the Plaintiff would have received an approximate 20% increase in salary as a Human Resources manager compared to an On-Road Supervisor (if not more, in subsequent years), the MIP shares would also have increased by approximately 20%. Therefore, conservatively, Plaintiff was damaged in an amount of $290,299.82 ($241,916.52 + $48,383.04) resulting from the missed MIP benefits he would have received as a manager.

34. UPS's 401(k) savings plan provides for UPS to match 50% of up to 5% of Plaintiff's salary. Based on the estimated difference between Plaintiff's salary as on On-Road Supervisor and Plaintiff's likely salary in a management position, the difference in the matching of the 401(k) savings totals approximately $6,000.00.

35. Plaintiff is 58 years old. He should be able to work another eight years with UPS, if not longer. As such, over the next eight years, Plaintiff will suffer lost wages in the amount of $313,532.00.

36. Jay Kelly prohibited Mr. Handel from taking any vacation time for a period of over four years. Mr. Handel would have had about 5 weeks per year of vacation time. Using a

conservative salary of $75,000.00, the approximate yearly value of Mr. Handel's vacation time is $7,211.00. Plaintiff conservatively lost out on an estimated $28,844.00 worth of vacation time.

37. In addition to the special damages outlined above, Plaintiff has suffered emotional distress, mental anguish, and the loss of enjoyment of life. Plaintiff has experienced difficulty focusing, due at least in part from not being able to take a vacation for six years. Plaintiff has also encountered great stress and anguish from Jay Kelly's discriminatory and disrespectful conduct towards Plaintiff. Conservatively, Plaintiff's general damages total $250,000.00.

38. Jay Kelly overtly, intentionally, and maliciously discriminated against Mr. Handel due to Mr. Handel's status as a member of the Air National Guard. USERRA provides for double damages (i.e. liquidated damages) where the violator exhibits willful conduct or reckless disregard for the matter of whether its conduct was prohibited by statute. See 38 U.S.C. § 4323.

39. USERRA specifically permits for the recovery of a prevailing Plaintiff's attorney fees and costs. See 38 U.S.C. § 4323(h)(2). Plaintiff is entitled to an award of attorney's fees and costs incurred in this action.

40. Plaintiff is entitled to an award of prejudgment interest, based upon the one-year constant maturity Treasury yield, averaged over the years which Plaintiff's income has been reduced. 28 U.S.C. § 1961(a).

WHEREFORE, Plaintiff prays for a Judgment against UPS for the discrimination described above, in violation of 38 U.S.C. § 4311, awarding Plaintiff:

1. Lost salary compensation of $210,000.00;
2. Lost Managers Incentive Program compensation in the amount of $290,299.82;
3. Lost 401(k) benefits of $6,000.00;
4. Front pay of $313,532.00;

5. Lost vacation benefits of $28,844.00;

6. Liquidated damages pursuant to 38 U.S.C. § 4323;

7. Damages for emotional distress, mental anguish and loss of enjoyment of life in an amount to be determined by the jury, not less than $250,000.00;

8. An award of prejudgment interest; and

9. An award of actual attorney's fees, sales tax and costs.

Dated this 26th day of April, 2018.

HAGEN, WILKA & ARCHER, LLP

By *Thomas K. Wilka*
Thomas K. Wilka
Sara E. Schroeder
600 S. Main Avenue, Suite 102
P.O. Box 964
Sioux Falls, SD  57101-0964
(605) 334-0005
Attorneys for Plaintiff

**PLAINTIFF DEMANDS A TRIAL BY JURY**